UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TUREKISHA LITTLE,

        Plaintiff,

v.                                                             Case No. 8:23-cv-245-AEP

MARTIN O'MALLEY,
Commissioner of Social Security,[1]

        Defendant.

_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

### I.

**A.    Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI. (Tr. 246). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. (Tr. 85-97, 101-109). Plaintiff then requested an

---

[1] Martin O'Malley is now the Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Martin O'Malley should be substituted for Acting Commissioner Kilolo Kijakazi as the defendant in this matter.  No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

administrative hearing. (Tr. 142). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 56-84). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 42-50). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 11). Plaintiff then timely filed a complaint with this Court. (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1971, claimed disability beginning November 1, 2012. (Tr. 246-47). Plaintiff has a ninth-grade education and no past relevant work experience. (Tr. 54, 62). Plaintiff alleged disability due to blindness in her left eye and poor vision in her right eye. (Tr. 277).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since July 6, 2020, the application date. (Tr. 44). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: visual impairments, including glaucoma, cataracts, and central corneal opacity that results in light perception-only vision of the left eye. (Tr. 45). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 46). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 416.967(b) except she cannot climb
> ladders, ropes, or scaffolds, can frequently climb ramps and stairs, and
> would need to avoid even moderate exposure to workplace hazards,
> defined as moving mechanical parts and unprotected heights. She has,
> effectively, monocular vision and therefore cannot operate and
> machinery or motorized vehicles. She can do work requiring frequent
> or less field of vision, near acuity, far acuity, and depth perception.

*Id.* In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence. *Id.*

Plaintiff was found to have no past relevant work. (Tr. 48). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a housekeeper, cafeteria attendant, and recreation aide. (Tr. 49). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 50).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A

"physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings,

no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

### III.

Plaintiff argues that the ALJ erred in his reliance on the vocational expert's response to an "incomplete" hypothetical. For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

In his RFC evaluation of Plaintiff, the ALJ found that Plaintiff effectively had monocular vision and therefore could not operate machinery or motorized vehicles. (Tr. 46). Moreover, Plaintiff was limited to doing work which required frequent or less field of vision, near acuity, far acuity, and depth perception. *Id.* In

making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p" and detailed the reasoning for his findings extensively. (Tr. 46-48).

First, the ALJ summarized Plaintiff's relevant medical records prior to the protective filing date, nothing that Plaintiff had "a left eye cataract, left eye corneal opacity resulting in light perception only, right eye nuclear sclerosis, and possible glaucoma of the right eye," though Plaintiff's right eye vision was correctable to 20/30. (Tr. 47). Moreover, with respect to medical opinions, the ALJ found the medical opinion of state agency medical consultant Dr. Prianka Gerrish partially persuasive and the opinion of state agency medical consultant Dr. Sharka Junejo generally persuasive. (Tr. 48). As to Dr. Gerrish's opinion, the ALJ agreed with Dr. Gerrish that Plaintiff's light-only vision in her left eye allowed Plaintiff to engage only in occasional near acuity, far acuity, depth perception, accommodation, color vision, and field of vision with the left eye. *Id.* However, to account for Plaintiff's right eye glaucoma with floaters, the ALJ limited Plaintiff to doing work requiring frequent or less field of vision, near acuity, far acuity, and depth perception bilaterally and found Plaintiff could not operate any machinery or motorized vehicles. *Id.* Similarly, the ALJ accepted Dr. Junejo's findings that Plaintiff was unable to climb ladders, ropes, or scaffolds, frequent ramps and stairs, frequent left far acuity and field of vision, frequent depth perception bilaterally, and could not have even moderate exposure to hazards. *Id.* However, the ALJ modified these

restrictions further, limiting Plaintiff to light work instead of medium work as the greater lifting requirement of the latter posed a risk of injury. *Id.*

Based on this RFC determination, the ALJ posed the following hypothetical to the vocational expert at hearing:

> I would like you to assume a hypothetical individual of the claimant's age and education. We are assuming a limited education and further assuming the individual for the first hypothetical, they would be limited to light work as that term is defined by the DOT. Further the individual would not be able to climb any ladders, ropes or scaffolds, they could frequently climb ramps and stairs, they would need to avoid even moderate exposure to workplace hazards which I am defining as moving mechanical parts and unprotected heights. Additionally the individual has effectively monocular vision, meaning they are blind or left perception only in the left eye, so therefore cannot operate any machinery or motorized vehicles. Positions would be limited to those requiring frequent or less in the areas of field of vision, near acuity, far acuity and depth perception. Given those limitations could the hypothetical individual perform any of the claimant's -- well, there is no past work. I apologize. Could the hypothetical individual perform any work in the competitive work economy and if so could you please give me a few examples with numbers of jobs for each?

(Tr. 77). In response, the vocational expert affirmed that there were jobs in the national economy for which Plaintiff was qualified to include that of a cafeteria attendant, recreation aide, and housekeeper. (Tr. 78). On cross-examination, counsel for Plaintiff created his own hypothetical asking the vocational expert:

> I am just going to give my own -- the hypothetical as far as the vision goes. **I would say** that for a third of the work day the individual would have vision impairment in both eyes and be unable to perform any visual activities requiring that field of vision and near and far acuity or depth perception and it would be unpredictable as far as when in the day that would occur. So, would that affect the jobs or would they remain?

(Tr. 82) (emphasis added). In response, the vocational expert testified that such a restriction would eliminate the jobs previously identified. *Id.*  Plaintiff now argues that the ALJ errored in his reliance on the vocational expert's testimony because the hypothetical the ALJ posed to the vocational expert was incomplete.

In a convoluted and confusing argument, Plaintiff essentially maintains that since the ALJ found Plaintiff's monocular vision precluded her from driving, he must have determined that any impairment in her right eye, not matter how brief, prevented her from preforming any activities requiring near or far vision. (Doc. 16 at 5). Plaintiff then argues that the ALJ's limitation she be considered only for jobs with "frequent or less in the areas of field of vision, near acuity, far acuity and depth perception" indicates that the ALJ found Plaintiff could not perform such activities for 1/3 of the workday due to the noted impairments in her right eye. *Id.* at 6. However, because these impairments occur sporadically, the ALJ errored in failing to include this limitation in his RFC analysis[2] and hypothetical to the vocational expert:

> Logically, if a person could only perform activities requiring field of vision, depth perception, and near and far acuity, frequently or less, and frequently is defined as 1/3 to 2/3 of a workday, the remaining 1/3 of the workday, the person could not perform these activities. If the tasks of the job that required field of vision, depth perception, and

---

[2] Though Plaintiff's brief is framed as objecting solely to the hypothetical posed to the ALJ, the argument contained within also makes a passing reference to the ALJ having errored in his RFC analysis. *See* Doc. 16 at 6. The Court acknowledge that such commentary does not constitute proper briefing of a legal argument. *Marek v. Singletary*, 62 F.3d 1295, 1298 n. 2 (11th Cir.1995) ("Issues not clearly raised in the briefs are considered abandoned.") (citing *Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1542 (11th Cir.1994)). However, as this argument is not outcome determinative, the Court chooses to address it as well.

near and far acuity coincided with the times the claimant did not have floaters, flashes, itchy eyes, and watery eyes, in theory, perhaps the claimant could perform the jobs. However, if the symptoms were unpredictable as to when they occurred and the jobs did not allow the claimant to pick and choose the times during the day, she needed to use her vision for depth perception, field division, and/or near and far acuity, she could not perform the jobs.

*Id.*

For numerous reasons, this argument is misguided. As a preliminary matter, the Court finds the ALJ's RFC analysis is supported by substantial evidence. Despite Plaintiff's contentions, the ALJ's finding that Plaintiff could maintain only frequently or less field of vision, near acuity, far acuity and depth perception does not signify that during the remaining periods Plaintiff would effectively lose all vision in both eyes. Moreover, the record does not support a finding that Plaintiff's right eye symptoms are so severe they could effectively produce total vision loss in her right eye for up to one-third of her day. Even Plaintiff herself has not previously disclosed her right eye symptoms as being this severe. In her own words, Plaintiff described her floaters as "intermittent" and "coming and going" and any irritation and watering as occurring "twice a week." (Tr. 66-67, 452). Furthermore, in his RFC analysis the ALJ not only adopted the recommendations of the state agency consultants but imposed greater restrictions than advised. (Tr. 48). While Plaintiff may contend that the ALJ should have taken into greater account the intermittent nature of Plaintiff's claimed impairment in her right eye, Plaintiff cites to no specific evidence beyond a vague reference to her "testimony," which for the reasons discussed above falls short of establishing what is claimed in Plaintiff's brief. Thus,

though Plaintiff may disagree with the ALJ's RFC determination, the Court finds that it is supported by substantial evidence and will not substitute its own judgment for that of the Commissioner. *See Vaughn v. Heckler*, 727 F.2d 1040 (11th Cir. 1984); *see also Buley v. Comm'r of Soc. Sec.*, 739 F. App'x 563, 569 (11th Cir. 2018) ("Although an ALJ will consider a treating source's opinion on the claimant's residual functional capacity, the final responsibility for deciding this issue is reserved to the Commissioner."); *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) (finding that "the ALJ did not 'play doctor' in assessing [the claimant's] RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing [the claimant's] RFC").

Having affirmed the ALJ's RFC analysis, the Court next turns to whether a proper hypothetical was posed to the vocational expert in determining Plaintiff's employability. An ALJ "must pose hypothetical questions to the vocational expert that encompass all of the claimant's impairments." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). In this instance, the ALJ accurately articulated to the vocational expert his conclusions as to Plaintiff's RFC when inquiring as to whether there were jobs in the national economy which Plaintiff could preform given the stated limitations. (Tr. 46-48, 77). Therefore, the Court finds the ALJ did not error in relying on the vocational expert's testimony.

Finally, even if this Court were to accept Plaintiff's assertions concerning the persistence of symptoms in her right eye, as pointed out by Defendant two of the three jobs cited by the vocational expert require no near acuity, far acuity, depth

perception, and field of vision. *See* Cleaner, Housekeeping, DOT 323.687-014, 1991 WL 672783 (4th ed. 1991) ("Near Acuity: Not Present - Activity or condition does not exist," "Far Acuity: Not Present - Activity or condition does not exist," "Depth Perception: Not Present - Activity or condition does not exist," "Field of Vision: Not Present - Activity or condition does not exist"); Recreation Aide, DOT 195.367-030, 1991 WL 671600 (4th ed. 1991) ("Near Acuity: Not Present - Activity or condition does not exist," "Far Acuity: Not Present - Activity or condition does not exist," "Depth Perception: Not Present - Activity or condition does not exist," "Field of Vision: Not Present - Activity or condition does not exist") Therefore, Plaintiff's argument fails for this reason as well. *See Garcia v. Comm'r of Soc. Sec.*, No. 2:19-cv-877-FTM-MRM, 2021 WL 1037856, at *14 (M.D. Fla. Mar. 18, 2021) (finding any error in failing to consider additional treatment notes and include additional visual limitations harmless "because the ALJ identified an occupation, as a Cleaner/Housekeeping, with sufficient numbers in the national economy that Plaintiff's RFC would allow her to complete without near or far visual acuity, depth perception, color vision, or field of vision"); *Perez v. Kijakazi*, No. 21-cv-23740, 2022 WL 17094932, at *7 (S.D. Fla. Nov. 3, 2022), report and recommendation adopted, 2022 WL 17093619 (S.D. Fla. Nov. 21, 2022) (finding any error to include additional visual limitations regarding near acuity, far acuity, depth perception, and color vision in the hypothetical posed to the VE harmless where the plaintiff's past relevant work, which the VE testified that the plaintiff could perform, did not

require near acuity, depth perception, or color vision, and only occasionally required far acuity).

### IV.

Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is AFFIRMED.

2.  The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 6th day of March 2024.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record